IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TOMMY and JESSICA SONES,
Husband and Wife, individually, and
As Next Friends and Natural Guardians of
R.H. SONES, a minor,



        Plaintiffs,        CAUSE NO.: 3:09cv211 HTW-LRA

v.        JURY TRIAL DEMANDED

PEANUT CORPORATIOIN OF AMERICA, a
Georgia corporation; KELLOGG COMPANY, a Delaware
Corporation; and STEWART PARNELL, individually,

        Defendants

### PLAINTIFFS' COMPLAINT FOR DAMAGES

COME NOW the plaintiffs, by and through their attorneys of record, COXWELL & ASSOCIATES, PLLC, and files this their Complaint, to wit:

#### I.    PARTIES

1.    The Plaintiffs are residents Brandon, Rankin County, Mississippi. The Plaintiffs Tommy and Jessica Sones are husband and wife and the natural parents of R.H. Sones, at all times relevant herein, a 20 month old minor.

2.    Defendant, Peanut Corporation of America (hereinafter "PCA"), is a Georgia corporation, organized under the laws of the State of Georgia, authorized to do business in the State of Georgia, with its principal place of business located in Virginia at 2121 Wigginton Road, Lynchburg, Virginia 24502. PCA may be served with process of its court through its registered agent Ms. Peggy Harper, 14075 Magnolia Street, Blakely, Georgia 39823. At all times relevant to the allegations in this Complaint, PCA was a

1

manufacturer and seller of various peanut butter products. At all times relevant to the allegations in this Complaint, defendant PCA did conduct business in the State of Mississippi and had sufficient minimum contacts with Mississippi so that jurisdiction does not offend the traditional notions of justice.

3. Defendant, Kellogg Company (hereinafter "Kellogg"), is a Delaware corporation, organized under the laws of the State of Delaware with its principal office located in Michigan, at One Kellogg Square, Battle Creek, Michigan 49016. Kellogg may be served with process of this court through its registered agent Gary H. Pilnick, One Kellogg Square, Battle Creek, Michigan 49016. At all times relevant to the allegations in this Complaint, Kellogg was a manufacturer and seller of various peanut butter-containing products. At all times relevant to the allegations in this Complaint, Kellogg did conduct business in the State of Mississippi and had sufficient minimum contacts with Mississippi so that jurisdiction does not offend the traditional notions of justice.

4. Defendant, Stewart Parnell ("Parnell"), is a resident of Lynchburg, Amherst County, Virginia and may be served at his place of residence, 2121 Wiggington Road, Lynchburg, Virginia 24502. At all times relevant hereto, Parnell was the President, Chief Executive Officer and Chief Financial Officer of PCA, doing business in the state of Mississippi and had sufficient minimum contacts with Mississippi so that jurisdiction does not offend the traditional notions of justice.

II. JURISDICTION AND VENUE

5. Jurisdiction over this action is proper in this Court pursuant to 28 U.S.C. § 1332, as all parties are citizens of different states and the amount in controversy exceeds $75,000.00. Further, because these defendants have minimum contact with the State of

Mississippi the maintenance of the suit in this district does not offend the traditional notions of fair play and substantial justice.

6. Venue is proper in the United States District Court for the Southern District of Mississippi, pursuant to 28 U.S.C. § 1391(a)(2), because substantial events or omissions giving rise to plaintiffs' causes of action and damages occurred in this district.

### III. PRELIMINARY STATEMENT

7. *Salmonella* is a bacterium that lives in the intestinal tracts of humans and other animals which is usually transmitted to humans by eating foods contaminated with animal feces. Someone who handles food who fails to wash his or her hands with soap and warm water after using the bathroom may also contaminate food. Once the bacterium is in the human intestine, it enters the blood stream within 24 to 72 hours. The acute symptoms of *Salmonella* include sudden onset of abdominal cramping, nausea, and bloody diarrhea with mucous. Infants, elderly and the immune-suppressed are the populations that are the most susceptible to the bacterium's effects and who suffer the most severe symptoms.

8. On January 9, 2009, the Minnesota Department of Agriculture (MDA) announced a product advisory after MDA's preliminary laboratory testing indicated the presence of *Salmonella* bacteria in a 5-pound container of King Nut brand creamy peanut butter manufactured by defendant PCA. The contamination was discovered as a result of product testing initiated after an MDA epidemiological investigation implicated King Nut creamy peanut butter as a likely source of *Salmonella* infections in Minnesota residents. The Minnesota cases had the same genetic fingerprint as other cases identified throughout the nation.

9. On January 10, 2009, King Nut announced that *Salmonella* had been found in a five-pound tub of its peanut butter and that they were voluntarily recalling all of their peanut butter products manufactured by PCA.

10. On January 13, 2009, PCA announced a voluntary recall of peanut butter produced in its processing facility located in Blakely, Georgia because it has the potential to be contaminated with *Salmonella*. The FDA subsequently notified PCA that product samples originating from is Blakely, Georgia processing plant were tested and found positive for *Salmonella* by laboratories in the states of Minnesota, Georgia, and Connecticut.

11. On January 16, 2009, PCA expanded its voluntary recall to include all peanut butter produced on or after August 8, 2008, and all peanut paste on or after September 26, 2008, in its Blakely, Georgia, plant because of potential *Salmonella* contamination. That same day, the Connecticut Department of Health confirmed it found Salmonella in an unopened jar of King Nut brand peanut butter manufactured by PCA at its Blakely, Georgia processing plant.

12. On January 19, 2009, Kellogg announced that FDA tests revealed that some of its cracker products are contaminated with Salmonella. Kellogg subsequently announced a recall of all products it manufactured using peanut butter product manufactured by defendant PCA.

13. As of January 28, 2009, 529 persons from 43 states and one person from Canada had been reported infected with the same outbreak strain of *Salmonella*

14. In response to the recent outbreak, the Food and Drug Administration has identified twelve instances in 2007 and 2008 when private laboratories hired by Defendant PCA tested products for PCA and found *Salmonella*.

15. Despite these results, Defendant PCA, and its President, CEO and CFO, Defendant Parnell, shipped and distributed the contaminated products into the stream of commerce.

## IV. FACTS

16. On our about January 15, 2009, Plaintiff R.H. Sones began to suffer from symptoms that included fever, copious amounts of diarrhea and dehydration.

17. Plaintiff R.H. Sones was admitted the hospital where he remained until January 19, 2009. During his hospitalization, stool samples and cultures were taken from the Plaintiff in order to be sent to a lab and tested. The samples and cultures tested positive for the presence of *Salmonella* which was later determined to have the same genetic fingerprint as the nationwide *Salmonella* strain identified in the outbreak stemming from PCA products which were distributed by Kellogg.

18. The Plaintiffs have incurred, continue to suffer and will continue to incur medical expenses, pain, loss of enjoyment of life, emotional distress, and loss wages as a direct and proximate cause of contaminated peanut butter products manufactured and distributed by the Defendants, PCA and Kellogg.

## CAUSES OF ACTION

### COUNT I – STRICT LIABILITY

19. Defendants PCA and Kellogg were at all times relevant the manufacturer, distributor and seller of the contaminated food product that is the subject of this action.

20. The contaminated peanut butter that Defendants manufactured, distributed and sold was, at the time it left the control of Defendants PCA and Kellogg, unreasonably

dangerous and defective for human consumption – its expected and foreseeable use because it contained *Salmonella*.

21. The contaminated peanut butter and food product that Defendants PCA and Kellogg manufactured, distributed and sold reached the Plaintiff without any change in its defective condition. The contaminated food that the Defendants PCA and Kellogg manufactured, distributed and sold was used in the manner expected and was consumed by the Plaintiff.

22. Defendants PCA and Kellogg owed a duty of care to the Plaintiffs to design, manufacture, and sell food that was not contaminated, that was fit for human consumption, was reasonably safe and was free of bacteria injurious to humans. Defendants PCA and Kellogg breached this duty and Plaintiffs have suffered and continue to suffer injuries and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated food that Defendants manufactured, distributed and sold.

## COUNT II – BREACH OF WARRANTY

23. Defendants PCA and Kellogg are liable to Plaintiffs for breaching express and implied warranties they made regarding the contaminated food product that the Plaintiffs purchased. Defendants' warranties to Plaintiffs included the implied warranties of merchantability and/or fitness for a particular purpose.

24. Defendants PCA and Kellogg expressly warranted, through the sale of their products to the public and by the statement and conduct of their employees, that the food they prepared and sold was fit for human consumption and not otherwise dangerous to human health.

25. The *Salmonella*-contaminated food that Defendants PCA and Kellogg sold to the Plaintiffs was not fit for the uses and purposes intended, specifically human consumption, and this contaminated food was therefore in breach of the implied warranty of fitness for a particular purpose, specifically the product's intended use.

26. As a direct and proximate cause of the Defendants PCA and Kellogg's breach of warranties, as set forth above, the plaintiffs sustained injuries and damages.

## COUNT III – NEGLIGENCE

27. Defendants PCA, Kellogg, and Parnell owed a duty to the Plaintiffs to use reasonable care in their manufacture, distribution, and sale of their food product, which duty would have prevented or eliminated the risk that the Defendants PCA, Kellogg, and Parnell's food products would become contaminated with Salmonella or any other dangerous pathogen. The Defendants PCA, Kellogg, and Parnell breached this duty.

28. Defendants PCA, Kellogg, and Parnell had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of their food product, but failed to do so, and were therefore negligent. The Plaintiffs are among the class of persons designated to be protected by these statutes, laws, regulations, safety codes, or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

29. Defendants PCA, Kellogg and Parnell had a duty to properly supervise, train and monitor their respective employees, and to ensure their compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage and sale of similar food products, but they failed to do so and were therefore negligent.

30. Defendants PCA, Kellogg and Parnell had a duty to use ingredients, supplies and other constituent materials that were reasonably safe, free from defects and that otherwise complied with applicable federal, state and local laws, ordinances, and regulations, and that were free from contatmination and safe for human consumption, but they failed to do so were therefore negligent.

31. As a direct and proximate result of the Defendants PCA, Kellogg and Parnell's acts of negligence, the PLaintffs suffered and continue to suffer injuries and damages in an amount to be determined at trial.

## COUNT IV – NEGLIGENCE PER SE

32. Defendants PCA, Kellogg, and Parnell had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food procudt, including the requirements of the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 *et seq*, and the Mississippi food statutes.

33. Defendants PCA, Kellogg and Parnell failed to comply with the provisions of the aforementioned health and safety laws and, as a result, were negligent *per se*, in their manufacture, distribution, and sale of food contaminated with *Salmonella*.

34. As a direct and proximate result of the conduct by Defendants PCA, Kellogg and Parnell that was negligent *per se*, the Plaintiffs suffered and continue to suffer injuries and damages.

## COUNT V – PUNITIVE DAMAGES

35. Defendants PCA, Kellogg and Parnell's gross negligence and willful, malicious and wanton concealment of known defects with their product showed reckless disregard

and a conscious indifference to the consequences, as evidenced by their willful misconduct, malice, fraud and entire wantonness of care.

36. Plaintiffs therefore pray for additional exemplary or punitive damages in an amount to be determined to deter these Defendants from such conduct in the future.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray, that after Defendants be served with a copy of this Complaint and required to answered:

a) that Plaintiffs be granted a judgment against the Defendants on the counts alleged in this Complaint for monetary damages as to all counts in an amount deemed appropriate by the Court to full compensate Plaintiffs for the damages they have suffered and will continue to suffer;

b) That the Plaintiffs recover punitive and exemplary damages in an amount to be determined at the trial of this matter;

c) That the Plaintiffs be awarded reasonable attorneys' fees and costs as a result of the egregious acts of Defendants resulting in the need to file this action;

d) That the Plaintiffs be awarded pre and post-judgment interest on any award to the Plaintiffs; and

e) That the Plaintiffs be awarded such other and further relief that this Court would deem fit.

Respectfully submitted, this the 2nd day of April, 2009.

TOMMY and JESSICA SONES,
Husband and Wife, individually, and
As Next Friends and Natural Guardians of
R.H. SONES, a minor

By: /s/ Kevin J. White
KEVIN J. WHITE
ATTORNEY FOR PLAINTIFFS

OF COUNSEL:
CHARLES R. MULLINS (MSB# 9821)
KEVIN J. WHITE (MSB# 101619)
COXWELL & ASSOCIATES, PLLC
P.O. Box 1337
Jackson, Mississippi 39215
Telephone: (601) 948-1600